<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEPHANIE BRANNA,

    Plaintiff,

    v.

THE TOWN OF WESTFIELD, WESTFIELD POLICE DEPARTMENT, NICHOLAS BAGAN, FRANK PADOVANO AND DAVID WENT, JOHN DOES 1-10, JANE DOES 1-10, ABC CORP. 1-10 and XYZ CORP. 1-10,

    Defendants.

No. 19cv10972 (EP) (JBC)

OPINION

**PADIN**, **District Judge.**

Plaintiff Stephanie Branna ("Plaintiff") alleges that Defendants the Town of Westfield ("Westfield"), Westfield Police Department ("Westfield PD"), and Westfield PD Officers Nicholas Bagan and David Went and Captain Frank Padovano[1] (the "Officer Defendants," collectively "Defendants"), violated her civil rights during a July 23, 2018 arrest. Defendants move for summary judgment. D.E. 74-2 ("Mot." or "Motion"). Because the Officer Defendants had probable cause to arrest Plaintiff, Defendants' motion for summary judgment will be **GRANTED** and the Complaint will be **DISMISSED**.[2]

---

[1] At the time of incident, Padovano was a lieutenant. D.E. 74-16, March 15, 2022 Deposition of Defendant Frank J. Padovano ("Padovano Dep.") 7:7-16.
[2] The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

I.     BACKGROUND[3]

Plaintiff and Joseph Pardo previously dated.  D.E. 74-8 ("Branna Dep.") 34:14-18.[4]  On July 23, 2018, Pardo sent Plaintiff "a couple of text messages" including one text message where Pardo stated "I hate you and hate myself more," and a second text to "delete him from Facebook." *Id.* at 38:3-15, 38:19-22.  Plaintiff did not respond to these text messages. *Id.* at 38:19-22.

Around 7:30 PM, as Plaintiff backed into her garage, she noticed Pardo pulling into her driveway. *Id.* at 39:21-24.  After observing Pardo, Plaintiff pulled out of her garage, drove away from her house, and attempted to leave her neighborhood. *Id.* at 39:24-40:4.  Plaintiff observed Pardo following her. *Id.* at 40:4.  After driving around, Plaintiff returned to her home. *Id.* at 41:23-42:17.  Plaintiff had attempted to close the garage door, but Pardo "put his foot by the censor so it went back up." *Id.* at 42:18-21.

Pardo screamed at Plaintiff to get out of the car and speak with him. *Id.* at 43:24-44:2.  Plaintiff initially told Pardo she was not exiting her car, but then decided to get out "[b]ecause [she] felt that if [she] just let him say what he needed to say he would leave." *Id.* at 44:4-11, 44:19-

---

[3] Unless otherwise noted, all references refer to page numbers correspond to the page numbers generated by the ECF system.  The Court notes that Defendants' Statement of Material Facts ("Defs. Facts"), D.E. 74-1, relies primarily upon an investigative report without specific citations.  This violates Federal Rule of Civil Procedure 56(c)(1)(A) by failing to cite to particular portions of the investigative report.  *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to *particular* parts of materials in the record.") (emphasis added).  It is likewise problematic because it relies primarily upon hearsay evidence.  *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."); *but cf Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000) ("In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial.").  Similarly, Plaintiff's Counter Statement of Material Facts ("Pl. Facts"), D.E. 74-14, fails to cite *any* portion of the record for the majority of its alleged facts.  Nevertheless, as detailed below, the facts relevant to deciding this motion are present in the parties' respective exhibits.  *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").
[4] July 20, 2021 Deposition of Plaintiff Stephanie A. Branna.

24. Pardo then screamed at Plaintiff and she asked him to leave. *Id.* at 45:20-24. After Pardo did not leave, Plaintiff "put [her] hands up" and asked him to leave. *Id.* at 46:2-4. Pardo then grabbed Plaintiff's forearms and Plaintiff "began to swing [her] hands around and . . . hit him in the head." *Id.* at 47:5-8. After Plaintiff hit Pardo one time, he let go of her "very briefly and then grabbed [her] by [her] biceps with both hands." *Id.* at 47:23-48:3. Pardo then "shoved [Plaintiff] backwards and [she] fell on [her] backside on [her] driveway." *Id.* at 48:19-20. Then, wanting to get past Pardo and into her home, Plaintiff punched Pardo four or five times in the head with a closed fist. *Id.* at 48:24-49:15. Plaintiff then entered her home, but did not call law enforcement to detail the events. *Id.* at 49:18:20, 52:17-20.

Pardo went to the Westfield PD and spoke with Captain Padovano regarding the events. Padovano Dep. 11:24-12:3. Pardo told Captain Padovano that "he was assaulted by his ex-girlfriend." *Id.* at 12:15-16. The Officer Defendants all observed "visible injuries" to Pardo. *Id.* at 12:16-17; D.E. 74-17 ("Went Dep.") 5:21-25[5]; D.E. 74-18 ("Bagan Dep.") 8:6-9.[6]

Thereafter, the Officer Defendants went to Plaintiff's residence to "get her side of the story." Branna Dep. 57:11-14, 58:18-20; Padovano Dep. 30:1-3. Plaintiff informed them she did not want to speak to them and attempted to close her front door. Branna Dep. 59:1-8. Lieutenant Padovano put his foot on the door to prevent Plaintiff from closing it. *Id.* at 60:6-9; Padovano Dep. 30:4:7. Plaintiff was then placed in handcuffs as the Officer Defendants entered her home. Branna Dep. 60:12-25; Padovano Dep. 30:9-13.

---

[5] March 15, 2022 Deposition of David M. Went.
[6] March 15, 2022 Deposition of Nicholas J. Bagan.

3

Plaintiff was subsequently taken to Westfield PD Headquarters, where the Officer Defendants learned Plaintiff's home was located in Mountainside, not Westfield.[7] Branna Dep. 69:2-4; Padovano Dep. 44:25-45:3. Thereafter, Plaintiff was taken to Mountainside Police Station. Branna Dep. 69:5-7. Plaintiff was subsequently transferred to Union County Jail, where she remained another day. *Id.* at 72:23-73:5, 73:25-74:6. Plaintiff was subsequently charged with simple assault, N.J. Stat. Ann. § 2C:12-1(a)(1). D.E. 74-5.[8] The charge against Plaintiff was subsequently dismissed for "lack of prosecution [because] both parties decided not to go forward." Branna Dep. 79:1-12.

Plaintiff raised a complaint with the Internal Affairs Division of the Westfield Police Department. D.E. 74-21. After the investigation concluded, Westfield PD's Captain John Ricerca stated in a letter dated March 28, 2019: "The investigation was concluded on March 28, 2019 and the findings were exonerated. According to all statements reviewed in this case your claims this was a jurisdictional error and the outcome would have been the same had the Mountainside Police Department investigated this case from the beginning." *Id.*

Against this backdrop, Plaintiff filed this action on April 24, 2019. D.E. 1 ("Complaint" or "Compl."). The Complaint alleges seven Counts:

- Count One – Violation of the Fourth Amendment

---

[7] Throughout her opposition, Plaintiff asserts the Officer Defendants knew her residence was located in Mountainside, not Westfield. *See generally* D.E. 13 ("Opp'n"). However, upon the Court's thorough review of the record, each of the Officer Defendants testified they were under the belief Plaintiff's home was located in Westfield. Padovano Decl. 39:9-14; Hunt Decl. 6:12-22; Bagan Decl. 5:12-17. The Court does not find the portion of Captain Padovano's testimony regarding a recording of him stating that he was on his way to "1591 Rising Way, Mountainside" to alter this view. Padovano Decl. 48:10-13. Notably, as explained below, probable cause existed to arrest Plaintiff.

[8] Plaintiff filed a complaint for domestic violence and summons were issued against Pardo for harassment and assault. Branna Dep. 74:18-75:4.

4

- Count Two – Wrongful Arrest and Imprisonment

- Count Three – Malicious Prosecution

- Count Four – Liability of Westfield P.D.

- Count Five – Failure to Implement Policies and Procedures

- Count Six – Failure to Supervise Personnel

- Count Seven – Obstructing Investigation

*See generally id.*

Defendants now move for summary judgment on all Counts. Mot. Plaintiff opposes. Opp'n. Defendants reply. D.E. 74-24 ("Reply").

## II.     LEGAL STANDARD

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir, 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, a court must view the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial burden to establish the basis for the motion for summary judgment and to identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party

bears the burden of proof on an issue, the moving party's initial burden can be met simply by "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the moving party has met its initial burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Unsworn allegations in memoranda and pleadings or allegations questioning the credibility of witnesses are insufficient to defeat a properly supported summary judgment motion. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. ANALYSIS

#### A. Westfield PD is Not a Proper Party

As a preliminary matter, the Court considers whether the Westfield PD is an improper defendant because it "is not intended to be . . . separate or apart from the municipality itself." Mot. at 21. Plaintiff does not address this argument. *See* Opp'n. In Section 1983 cases, "police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (internal quotation marks omitted); *see also* N.J. Stat. Ann. § 40A-118 (describing municipal police department as "an

executive and enforcement function of municipal government"). The Complaint names both Westfield and Westfield PD as parties to this action. *See generally* Compl. Accordingly, the Court will **DISMISS** the claims against Westfield PD ***with prejudice***. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 126 (3d Cir. 2010) (acknowledging appropriateness of dismissing civil right counts against a municipal police department "because it was not a separate legal entity from" the municipality).

### B. The Officer Defendants Had Probable Cause to Arrest Plaintiff

The parties dispute whether the Officer Defendants had probable cause to arrest Plaintiff. *See* Mot. at 9-15; Opp'n at 12-14; Reply at 1-2. The Court finds the existence of probable cause to arrest Plaintiff is fatal to her Fourth Amendment claims alleging unlawful search and seizure (Count One), false arrest and false imprisonment (Count Two), and malicious prosecution (Count Three), thereby rendering her Section 1983 claims unsustainable.

Section 1983, as relevant here, provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Section 1983 is not an independent source of substantive rights, but rather provides a cause of action for individuals to seek remedies for the deprivation of rights established elsewhere in the Constitution or federal laws. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Thus, for Plaintiff to succeed on her various claims under Section 1983, she "[1] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] [2] that the alleged deprivation was committed by a person acting under color of state law."

*Mosca v. Cole*, 217 F. App'x 158, 163 (3d Cir. 2007) (second alteration in original) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

The parties do not dispute that the Officer Defendants were acting under the color of state law when they responded to Pardo's complaint. Therefore, the Court turns to whether the Officer Defendants' arrest violated Plaintiff's constitutional rights.

The Fourth Amendment "requires that arrests be supported by probable cause." *Smith v. Angelo*, 765 F. App'x 757, 758 (3d Cir. 2018). Thus, the absence of probable cause is a necessary element of false arrest, false imprisonment, and malicious prosecution. *Caronte v. Chiumento*, No. 15-1828, 2018 WL 1135331, at *3 (D.N.J. Mar. 2, 2018) (citing *Barry v. Kabacinski*, 704 F. App'x 71, 73 (3d Cir. 2017)); *Le. L. v. Burlington Cnty.*, No. 20-6027, 2021 WL 6125777, at *3 (D.N.J. Dec. 28, 2021) (quoting *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007)).

"False arrest and false imprisonment are very similar and are often considered together." *Scully v. City of Jersey*, No. 15-6100, 2018 WL 6804274, at *5 (D.N.J. Dec. 27, 2018). To prevail on her claim of false arrest, Plaintiff must demonstrate that there (1) was an arrest and (2) the arrest was made without probable cause. *Gould v. O'Neal*, No. 17-100, 2022 WL 354663, at *5 (D.N.J. Feb. 7, 2022). If the Officer Defendants lacked probable cause to arrest Plaintiff, that arrest and subsequent detention ripen into a false imprisonment claim under Section 1983. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Thus, to prevail on a false imprisonment claim, Plaintiff must prove: (1) that she was detained; and (2) the detention was unlawful—that is, lacked probable cause. *Harvard v. Cesnalis*, 973 F.3d 190, 202 (3d Cir. 2020). To prevail on her malicious prosecution claim, Plaintiff must show: (1) Defendants started a criminal proceeding against her; (2) the proceeding ended in her favor; (3) Defendants lacked probable cause to start the proceeding; (4) Defendants "'acted maliciously or for a purpose other than bringing [her] to

8

justice;'" and (5) she "'suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Le. L.*, 2021 WL 6125777, at *3 (quoting *Johnson*, 477 F.3d at 81-82).

Defendants correctly assert that if there was probable cause to arrest Plaintiff, Plaintiff's claims fail as a matter of law. *See Herman v. City of Millville*, 66 F. App'x 363, 364 n.3 (3d Cir. 2003) (stating that probable cause is a "complete defense" to the plaintiff's false arrest, false imprisonment, and malicious prosecution claims). "'[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). Probable cause is assessed "based upon the 'totality-of-the-circumstances' available to the arresting officer." *Harvard*, 973 F.3d 190, 200 (3d Cir. 2020) (quoting *Dempsey*, 834 F.3d at 467-68).

The Court must "review the record to ensure that the proper procedure for determining probable cause was followed" and, if not, whether probable cause existed despite the failure to follow proper procedure. *Dempsey*, 834 F.3d at 469-70. Usually, the question of probable cause underlying a Section 1983 claim is one for the jury, "'[h]owever, a district court may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding.'" *Lucia v. Carroll*, No. 12-3787, 2014 WL 1767527, at *3 (D.N.J. May 2, 2014) (quoting *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 789 (3d Cir. 2000)).

A critical aspect of this case is the New Jersey Domestic Violence Act's ("NJDVA") requirement that an officer "<u>shall</u> arrest the person who is alleged to be the person who subjected

9

the victim [of] domestic violence and shall sign a criminal complaint" where "[a] victim exhibits sights of injury caused by an act of domestic violence." See N.J. Stat. Ann. § 2C:25-21(a), (a)(1).[9] The NJDVA requires the term "'exhibits' to be liberally construed to mean any indication that a victim has suffered bodily injury, which shall include physical pain or any impairment of physical condition." N.J. Stat. Ann. § 2C:25-21(c)(1). N.J. Stat. Ann. § 2C:25-19(a)(2) states, in pertinent part: "'Domestic violence' means the occurrence of one or more of the following acts inflicted upon a person protected under this act by an adult or an emancipated minor: . . . (2) Assault N.J.S.2C:12-1."[10]

The resolution of this case is driven by the mandates of the NJDVA and the Legislature's expressed intent to "cure the reluctance on the part of police to arrest alleged perpetrators of domestic violence," and to encourage the increased protection of domestic violence victims. *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1153 (N.J. 2000) (citing N.J. Stat. Ann. § 2C:25-18); *see also Signorile v. City of Perth Amboy*, 523 F. Supp. 2d 428, 433 (D.N.J. 2007). "While of course the elements of probable cause must be present, the NJDVA appears to relax the indicia of probable cause to address the problem of the reluctant victim." *Wright v. Cnty. of Camden*, No. 21-13158, 2023 WL 8542612, at *4 (D.N.J. Dec. 11, 2023) (citing *Wildoner*, 744 A.2d at 1156-57).

Based on the totality of the circumstances, the Court finds the uncontested facts of the case demonstrate that the Officer Defendants had probable cause to arrest Plaintiff. Pardo went to

---

[9] The Union County Law Enforcement Policy and Manual on the Prevention of Domestic Violence ("Policy") includes similar language. See D.E. 74-7. Pursuant to the Policy, law enforcement officers must arrest a defendant when "[t]he victim exhibits signs of injury." *Id.* at 11.

[10] Plaintiff was charged with simple assault, N.J. Stat. Ann. § 2C:12-1(a)(1). D.E. 74-5. N.J. Stat. Ann. § 2C:12-1(a)(1) provides: "A person is guilty of assault if the person . . . [a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another[.]"

Westfield PD's headquarters and told Captain Padovano "he was assaulted by his ex-girlfriend." Padovano Dep. 12:15-16.  The Third Circuit has held that "statements of a victim witness are typically sufficient to establish probable cause in the absence of independent exculpatory evidence or substantial evidence of a witness's own unreliability that outweighs the probable cause that otherwise exists." *Alexander v. Borough of Pine Hill*, No. 17-6418, 2020 WL 6779148, at *7 (cleaned up).[11]  Police officers can generally assume that victims are credible because not only did the alleged crime happen to them, "their motive is ostensibly concern for their safety or others' safety." *Collick v. William Paterson Univ.*, No. 16-0471, 2021 WL 2374388, at *7 (D.N.J. June 10, 2021).  In addition to Pardo's statement, the Officer Defendants all observed visible injuries to Pardo.  Padovano Dep., 12:2-17, Went Dep., 5:21-25, Bagan Dep., 8:6-9. The photographs included in the record likewise confirm Pardo's contemporaneous, visible signs of injury.  *See* D.E. 74-6 at 2-4.

Ultimately, Plaintiff's central complaint is that the Officer Defendants believed Pardo's narrative over her own.  Plaintiff testified she told the Officer Defendants that Pardo "trespassed on [her] property, came to [her] house uninvited, and assaulted [her] and threw [her] down on [her] driveway." Branna Dep., 68:10-13.  However, probable cause does not require all facts to point in one direction: "'the probable cause standard by definition allows for the existence of conflicting, even irreconcilable evidence.'" *Collick*, 2021 WL 2374388, at *9 (quoting *Dempsey*, 834 F.3d at 468). "The probable cause inquiry looks to the totality of the circumstances; the standard does not

---

[11] *See also United States v. Pickford*, 252 F. App'x 440, 442-43 (3d Cir. 2007) (finding officers had probable cause to arrest because the police received information from assault victim); *Wooleyhand v. Cape Henlopen Sch. Dist.*, 2011 WL 1875710, at *9 (D. Del. May 17, 2011) (explaining that police had probable cause to arrest based on a victim's statement because officers "can assess the victim's demeanor, find the story credible, and rely on the identification to make an arrest").

11

require that the officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005). "The question before the Court today is not whether the officers were in fact correct in their determination; it is only whether a factfinder could reasonably decide that their determination was unreasonable given the evidence before them." *Alexander*, 2020 WL 6779148, at *8. The Officer Defendants' determination was reasonable given the evidence before them at the time of Plaintiff's arrest.

Accordingly, there is no genuine dispute of material fact that the Officer Defendants had probable cause to arrest Plaintiff. As a result, the Court will **GRANT** summary judgment to the Officer Defendants for Plaintiff's Fourth Amendment, false arrest, false imprisonment, and malicious prosecution claims. *See Scully*, 2018 WL 6804274, at *5-6 (finding the plaintiffs' false arrest, false imprisonment, and malicious prosecution claims failed because officers "ha[d] probable cause to stop, detain, and charge [the] [p]laintiff").

### C.   The Officer Defendants Are Entitled to Qualified Immunity

Defendants further argue the Officer Defendants are entitled to qualified immunity for their actions. Mot. at 16-17. Even if the Court had not already found the existence of probable cause for Plaintiff's arrest, the Court would nevertheless find that the Officer Defendants are entitled to qualified immunity.

Because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [the Supreme Court] has indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "[G]overnment officials performing discretionary functions generally are shielded from liability

for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Moreover, the NJDVA provides for immunity to preclude civil liability when: "A law enforcement officer . . . who, in good faith, reports a *possible* incident of domestic violence to the police shall not be held liable in any civil action brought by any party for an arrest based on probable cause . . ." N.J. Stat. Ann. § 2C:25-22 (emphasis added).

As discussed above, the Officer Defendants reasonably believed that probable cause existed to arrest Plaintiff pursuant to the NJDVA. The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law," neither of which the Court finds here. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted). Even if Pardo falsely accused Plaintiff of battery, what is relevant to the Court's analysis is that the Officer Defendants followed the procedures required and reasonably concluded that probable cause existed for the arrest of Plaintiff on July 23, 2018. And because the undisputed record evidence establishes that the Officer Defendants had probable cause to arrest Plaintiff, it necessarily follows that they are immune from suit because they adhered to the NJDVA. *Signorile*, 523 F. Supp. 2d at 434 (citing N.J. Stat. Ann. § 2C:25-22).

      **D.**      **Plaintiff's *Monell* Claims Lack Support**

Defendants also move for summary judgment on Plaintiff's *Monell* claims against Westfield for failure to implement its policies and procedures (Count Five) and failure to supervise its officers (Count Six). Mot. at 18-19. Plaintiff does not oppose. Where a plaintiff fails to "respond to [a] [d]efendant's arguments on [certain] claims or mention them at all in her brief," the plaintiff waives such claims. *Yucis v. Sears Outlet Stores, LLC*, No. 18-15842, 2019 WL

13

2511536, at *4 & n.4 (D.N.J. June 18, 2019) (collecting cases), *aff'd as modified*, 813 F. App'x 780 (3d Cir. 2020). As such, the Court will **DISMISS** Plaintiff's *Monell* claims.

Nevertheless, the Court's independent review of the record would likewise counsel dismissal. Plaintiff seeks to hold Westfield liable for its officers' conduct. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) (holding that there is no *respondeat superior* liability under Section 1983). Rather, a municipality or local government may be liable under *Monell* if a plaintiff establishes (i) the existence of a relevant policy or custom and (ii) that the policy or custom caused the constitutional violation alleged. *Id.*; *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005). The Third Circuit has acknowledged that a "close relationship between policy-and-custom claims and failure-or-inadequacy claims" exists. *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). However, the avenues for each are distinct: "a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Id.* (noting that plaintiffs may allege claims sounding in both). The burden on a plaintiff seeking to establish municipal liability in a Section 1983 claim has been characterized as "quite high." *King v. Cnty. of Gloucester*, 302 F. App'x 92, 99 (3d Cir. 2008).

As a preliminary matter, because Plaintiff has failed to establish the constitutional violations asserted in connection with her municipal liability claims—false arrest, false imprisonment, and malicious prosecution—Plaintiff cannot establish that Westfield was the "moving force" behind those alleged constitutional violations. *Id.* at 99 ("Because appellants did not establish a constitutional violation, they likewise did not establish that the Township was the

14

'moving force' behind a constitutional violation."). Stated differently, because this Court has already found insufficient evidence to find that Plaintiff's underlying constitutional rights were violated, supervisory liability cannot be imposed against either Westfield or any of Officer Defendants for their role in those alleged violations. For this reason alone, Plaintiff's claims against Westfield must be dismissed.

Even if this were not the case, Plaintiff's *Monell* claims would still fail. First, Plaintiff does not proffer any evidence about an alleged policy or custom that contributed to the alleged constitutional violations. *See Bocchino v. City of Atlantic City*, 179 F. Supp. 3d 387, 402 (D.N.J. 2016) (granting summary judgment to city on *Monell* claim because the plaintiff failed to set forth any evidence from which a reasonable juror could conclude that the defendant established a policy or custom that caused the plaintiff's injury).

Additionally, Plaintiff's failure to supervise claim fails as a matter of law. A failure to supervise claim requires identification of "a specific supervisory practice or procedure that [Defendants] failed to employ." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Plaintiff does not proffer any evidence of a supervisory practice that Defendants purportedly failed to employ. As such, the Court will **GRANT** Defendants' motion as to Plaintiff's *Monell* claims.

### E. Plaintiff Is Not Entitled to Punitive Damages

Westfield further argues Plaintiff is not entitled to punitive damages under Section 1983. Mot. at 20. Plaintiff does not address this argument. The Court agrees with Westfield and finds Plaintiff is not entitled to recover punitive damages as municipalities are "'immune from punitive damages under 42 U.S.C. § 1983.'" *Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).

15

### F. Plaintiff's Obstructing Investigation Claim is Waived

Finally, neither party addresses Plaintiff's obstruction investigation claim (Count Seven) in their respective papers. Notwithstanding, in their summary judgment motion, Defendant seeks dismissal of all of Plaintiff's claims. *See* Mot. at 26; D.E. 74-12.[12]

The Court is unaware of an "obstructing investigation" cause of action and Plaintiff does not list its elements. Nevertheless, to the extent the Court can discern a claim, the Court interprets the obstructing investigation cause of action to be a *Monell* claim asserting Westfield inadequately investigated Plaintiff's civilian complaint. "'A custom of failing to investigate citizen complaints may provide a basis for municipal liability if a policy-maker (1) had notice that a constitutional violation was likely to occur, and (2) acted with deliberate indifference to the risk.'" *Reid v. Cumberland Cnty.*, 34 F. Supp. 3d 396, 403 (D.N.J. 2013) (quoting *Merman v. City of Camden*, 824 F. Supp. 2d 581, 589 (D.N.J. 2010)). Plaintiff does not proffer any evidence of any notice that Westfield had of a purported constitutional violation that was likely occurring or that Westfield acted with a "deliberate indifference" to said risk. As such, summary judgment will be granted in favor of Defendants as to Plaintiff's obstructing investigation claim.

## IV. CONCLUSION

For the reasons above, Defendants' motion for summary judgment, D.E. 74-2, will be **GRANTED** as to each of Plaintiff's claims and the Complaint will be **DISMISSED**.[13]

Dated: October 24, 2024

*Evelyn Padin*
Evelyn Padin, U.S.D.J.

---

[12] The Court deems Plaintiff's failure to address the obstructing investigation claim in its opposition as a waiver of said claim. *Yucis*, 2019 WL 2511536, at *4 & n.4 (collecting cases).

[13] Because the Court finds Defendants are entitled to summary judgment on each of Plaintiff's claims, the parties' arguments pertaining to the opinion proffered by Plaintiff's expert, Wayne Fisher, are moot. *See* Mot. at 23-25; Opp'n at 16-17.